All righty, our next case of the day is Goldring v. Henry and we will hear first from Ms. Miller. Yes, Your Honor. May it please the court. Good morning Senior Judge Karnes, Judge Rosenbaum, and the appellant. This is a case about the misapplication and misreading of a drug test kit and why the officers are entitled to qualify an official immunity as a result thereof. The officers had actual or at least arguable probable cause to arrest appellees for violating OCGA section 40-6-96 and OCGA section 16-13-31 and... Yes, Your Honor. I'm sorry to interrupt. This is Robin Rosenbaum. The problem is, as you know, there was a new case that came out over the summer starting with Williams from our circuit and it seems to me that this is a case of malicious prosecution, not a false arrest. And so under malicious prosecution, we look at the legal process, right? So we don't start with whether he had arguable probable cause or not. We look at whether the legal process, whether there was some kind of a problem with it. And here we have the arrest warrant and the allegation from the plaintiff is that both Mr. Henry and Mr. Restrepo knowingly submitted false information in the arrest warrant in order to obtain the arrest warrant or in the arrest warrant application to obtain the arrest warrant and that information was necessary in order to establish probable cause. So I don't know if you want to maybe focus on that as opposed to the actual, as opposed to the arrest in the first place, or as opposed to the, you know, false arrest allegation in the first place. Yes, Your Honor. So the standard under Frank is whether the officers knowingly or recklessly misrepresented their statements in their affidavit. As a threshold matter, Officer Restrepo did not sign the affidavit and he also did not do the test. So there's no knowingly or recklessly misrepresentation in his statement. Counsel, I'm sorry. He did write the affidavit for Mr. Henry and he did submit it, did he not? Yes, he did. But let me ask you a question then. Isn't there evidence in the record in the context of an internal investigation, internal affairs investigation, where Officer Restrepo says that he witnessed the drug test occurring and that he saw a quote, faint positive, unquote? Yes, Your Honor. So when you put those two things together, that he alleged that he saw a faint positive and that he provided, you arrest warrant application and delivered it, why isn't that sufficient under our case law if a jury were to conclude that he recklessly or knowingly lied? Why would that, why would that not be sufficient? Because as you know, we have to, we have to accept the facts in the light most favorable to the non-moving party. So we have, you know, Ms. Goldring's testimony that, you know, the officer was told while conducting it that, first of all, he didn't follow the instructions and that he conducted it numerous times, that there was no pink over blue as required. In fact, there was no change of color at all and that another officer said, give it up, it's not going to change. So, you know, we obviously need to assume those to be the facts under the summary judgment standard. Why would that not be sufficient to create at least the material issue of fact that both officers knowingly submitted or recklessly submitted false information to support the arrest warrant application? Yes, Your Honor. So first, there must be a showing that the officers knowingly or recklessly, recklessly misrepresented the statement. At this point, Officer Henry and Officer Restrepo both believed or appropriately accepted that the test results were positive and a test, and specifically the test checklist, which is DOC 58-4, we know that the blue substance in the test, if it's positive for cocaine, it will turn blue. But that blue can be shown in many different ways. It can be in the corner of the test kit, it can be sex, it can be a line, and all that is in DOC 58-4 at line item 8, where it specifically says that if no blue color is present, then you proceed to step 14, which step 14 says it is inconclusive. Counsel, this is Robert Luck. So I think all that clearly is what the testimony and evidence is, and I think you're accurately describing what Officer Henry's testimony is and what the instructions on the packet say in the history of the packet. The problem is what Judge Rosenbaum asked you, which is that there's other evidence, and at the summary judgment stage we view it in the light most favorable to the non-moving party, that is to the plaintiff here, which is that the color never did change, and that Officer Henry was specifically told that there was no drugs in there, that give it up, it's not changing in anything. And we have to accept that as true, and if that then what Officer Henry is saying isn't right, and he didn't see blue, and there was no change in color that would have indicated that it was narcotics, right? Your Honor, we do have to accept what the appellee has said in the light, in the facts in the light most favorable to appellee. However, I do not believe that the statement was that the color never changed from appellee. There was a statement that the officer may have said that give it up. However, we do not have any testimony from that officer. We don't even know what the officer was speaking about. We don't know whether that officer had any experience with this type of test, or even knew how to take this type of test. So that statement in and of itself, it doesn't really go towards whether that other officer knew how to do the test, or what knew how to do it correctly, or what the the test results should show. So you're saying that you, I just want to be clear, you're saying that that that the plaintiff never testified that that the color didn't change? Is that is that what you're saying the record says? Your Honor, if I'm recalling correctly, I do recall the statement about another officer allegedly for, you know, that plaintiff, that appellee testified that an officer did have statements about the test, but not recalling that the test never changed color. At docket entry 53 at page 44, she didn't testify that because it looked the same once he brought it out, it looked like as it never, like it never changed anything, it was still the plaintiff's testimony? Yes, your Honor, and I do believe that there were some questions about whether the appellee had ever done this type of test to say what the regular was, or what the looking the same was, because if she has no reference for what exactly the test should look like, and how the test should change, then it's presumably she would not be able to testify as to what the color was or should have been. But she says it never changed anything. If she's, if she's testifying it never changed, and Officer Henry is testifying it did change, then isn't that a dispute of material fact? It is a difference in testimony. However, we, we don't believe that appellee had any basis for what the change was or should have been. Well, just as much as Officer Henry did, right, because he didn't know, and he didn't have any training on the, on the test. So one says that the color changed and was a faint positive. The other said there was no change. I just, I'm having a hard time understanding how that's not a dispute of fact on whether what's in the affidavit is true. Yes, yes, and I understand your question. And, and the answer to that is, is that, that Officer, excuse me, that Investigator Henry did believe that the color changed, a faint positive, and Officer Restrepo believed that he saw that same faint positive as well. Appellee had no understanding of the test or what the color should have been or could have changed to, and so the statement that it stayed the same, although, as your Honor has pointed out, is disputed, does not mean that the officers knowingly testified or knowingly attested to the, the test being positive when it was actually negative. Well, let me ask you this, does someone have to be wrong? No, your Honor, not necessarily, because state the same, we don't know what the state the same means, what color it was when it started. Excuse me? Two minute warning, counsel. Thank you. Under the official immunity standard in Georgia, the official immunity protects an officer from personal liability arising from his performance of official functions as long as the officer did not act with actual malice or actual intent to cause injury. In Georgia, and as this court has held, actual malice is a demanding standard. Unreasonable conduct does not support such an even recklessly unreasonable conduct does not support an inference of actual malice. A mere inference of malice is insufficient to overcome an immunity defense. Actual malice requires a showing that the officer's actions were motivated by a personal animus towards appellee. In this matter, we do not have that actual malice standard, which is required in previously. I'm sorry to interrupt, but speaking of the arrest for jaywalking, there were four individuals who were all standing together, according to Ms. Goldring's statement as a fact. Also, she alleges that, um, that none of them were jaywalking and were walking in the street, I guess, which is technically the Georgia statute that they were charged with, but only two of them were detained. And the other two were just allowed to leave. And she asserts or suggests that the reason that she was detained and the, and the two other women were not was because she is transgender. Um, and I wonder if you wanted to address that and explain why two of them were detained, but the other two were not. Yes, Your Honor. So, um, in response to the first question, I, I would like to address the transgender status of the appellee. Investigator Henry testified that he did not know that, um, that appellee was transgender until after the arrest occurred. Even officer Restrepo also testified that it was not clear to him that, um, that the appellee was transgender until she was much closer and also until he verified with her, um, with her ID. So neither of the officers targeted appellee because she was transgender. And even if they had, which appellee is alleged, it doesn't make sense that they also arrested her companion who was not transgender. You can finish your answer. Thank you. Yes. Both of them who were originally arrested for the same charge. Therefore we believe that the did not act with malice. All right. Thank you. Counsel. And my understanding is that Ms. Nair will be doing four minutes of rebuttal. Is that correct? Yes. Okay. Then we'll, we will hear next from Mr. Philip of it. Thank you. May it please the court. My name is Jeff. I represent Ms. Goldring along with my co-counsel, Mr. Greenemeier. I'd like to begin by summarizing the knowledge of each of the two officers and to show why a jury could find that they either intentionally or recklessly misrepresented the results of the drug test and therefore qualified immunity is not appropriate. I'd also like to specifically address the issue of malice, both for the federal and state law claim with regards to officer Henry. Uh, there's no dispute that result he described is negative. Darker than light pink is a negative result on this drug test and the drug test kit that he held in his hand has a graphic on it that shows that a positive test shows pink over blue. We know that while he's performing the test and other officers that give it up, buddy, there's nothing there. And that officer Henry showed outward signs of frustration, repeatedly shaking the test, huffing and puffing. Our client testified that he performed this test in front of her as many as seven times. If he did it seven times, I think we can, we all know what the first six were, otherwise he wouldn't keep doing it. The instructions are readily available to him and he disregards them entirely. The, the dispute over whether the color changed, we can, we don't even have to go to the plaintiff's testimony to answer that because Henry, there's three ampules in this test. Henry broke them all at the same time. You're supposed to be able to observe sequential color changes after each ampule is broken. You can't observe sequential color changes if you break them all at the same time. He also put too much in the bags. Any one of the errors, if you want to call them errors, that he made performing this drug test kit alone would have invalidated the result. And then on top of it, he has a negative result. Then he didn't document the test as he's required to do under city policy. And he had no other evidence of this with cocaine. This, this arrest warrant was predicated wholly on the, the positive drug test. Moreover, a jury could find that he fabricated the basis for the initial arrest. So from that evidence, I think the jury could find this was at least reckless. And I think they could find that this was intentional. Officer Estrepo's role shed more light on it. He told internal affairs he didn't see the test. No, I'm sorry. He told us he didn't see the test. And if that's true, then he's not going to be liable for that if he relied on Officer Henry's word. But he told internal affairs he did see it and that it was positive. He also told us that they're in a deposition that darker than light pink described by Henry is a negative result. So if you believe Henry that it was darker than light pink, you believe what Estrepo told internal affairs that he saw it. You believe that he knows, as he said, that that's a negative test and he knew. And in response, he helped prepare the paperwork. He presented the warrant. Counsel, this is Robert Love. Why is that? I'm having trouble making that last connection. I understand what you're saying regarding Officer Henry, but regarding Officer Estrepo, if he mistakenly believed that it was a positive test, at least at the time, and it's clear that you need some degree of recklessness, of reckless disregard going too intense almost, in order to state the Frank's claim. Why is that not closer to negligence, assuming he saw it and assuming that his belief at the time, based on what he saw and what Officer Henry told him, was that it was positive? He testified to us that he knows that darker than light pink means negative. So if Officer Henry holds the test up in front of him and he sees darker than light pink, then he knows that a jury can find that it's negative. Now, the case against him, you know, this has to go to a jury trial. You know, we don't know. I know, but you have to at least show some evidence of reckless and or intentional conduct in order to get to a jury. There has to be something imbued in your favor. And him looking at, in other words, if he's mistaken, that doesn't get you there. What has to get you there is that he was reckless in his mistake at worst, and at best for you that he intentionally made that mistake. But I'm having trouble getting there. So if he knows, he told us darker than light pink means negative. He knows that. If he sees a darker than light pink test, he knows that's negative. And if he knows the test is that this is cocaine, and he knows that there's no other basis for cocaine, and he was there for the initial arrest, and the jury could find fabricated the basis for that arrest, then that same jury could find that he saw a negative test in front of him. He knew it was negative. And then he proceeded with seeking the warrant anyway. Counsel, what are we to make of the fact that he gave answers that were 180 degrees apart, that is, that he once said that he never saw the past? That he said that to you in the litigation, but in the IA investigation, he said he saw the past and he stood by what Henry said. What do we make of that? Does that perhaps provide some evidence that he might be lying about something? And if he's lying, does that create at least a disputed material fact about whether he knowingly submitted false information in the arrest warrant? As this court recently recognized in Williams versus Aguirre, an officer's shifting narrative, the court there said the officers failed to maintain a consistent narrative reinforces the conclusion that a jury could find that they intentionally misrepresented this evidence. The fact that he told Internal Affairs he saw the test and it was positive, a jury could find he's covering for his partner, but when he sued for it, suddenly he doesn't want to have any role in seeing the test. So the fact that his narrative shifted completely also goes to both his overall credibility, but it also goes to what he knew and whether he's trying to hide it. Counsel, this is Judge Julie Carnes. Let me ask you a question. If possible, I would think that he interpreted whatever the answer given to him was that that's a positive. My partner says it's a positive. And as Judge Lux suggested, that might've been a negligent assessment. What is the evidence in terms of what Officer the actual testing process? That is, is there evidence he was there watching Officer Henry do this seven times and being frustrated and grumbling? Is there any evidence that he actually had some sense there might be something wrong? Or is the evidence only that Officer Henry tells him it's whatever he tells him and he takes that to mean, yes, that means it's a positive test. And then as the scrivener, he writes that down and takes it to a magistrate judge. It falls between those two. So the evidence, he told us in his deposition that he did not see the test being performed, that he was mulling about the area, perhaps preparing warrant and he didn't see the test. He told Internal Affairs, he did see the test result. And that's the evidence we have because he denied having any role in it to us. But to Internal Affairs, he said he did see the test result. What that translates into is he saw a negative result. And so if he knows that result is negative and we can make that inferential. And how does he know that result is negative? He was not looking at the directions on the test or reading all of that. He took from what his partner says that this particular result means positive, right? And from that... I'm sorry, Judge. I didn't mean that. Go ahead. Go ahead. He knows it's negative because he's done this test before. He's familiar with this test. He testified about it in his deposition. And he testified that the result described by Henry, darker than lightning, is negative. So if he knows it's negative, which is very defined based on that testimony, based on his experience with the test, then they could find... That's all you need. I mean, the sloppy administration of the test and everything is great evidence for Henry. But fundamentally, what we need to show is he knew the test was negative. So for several thoughts, he saw what Henry describes, and he knew that it was negative based on his prior experience with the test. Then he participated in seeking this warrant. Counsel, this is Robin Rosenbaum. I was wondering, can you address with respect to the state claim, the malice issue for us, please? Yes. Thank you. So the defendants first conflate the issue of malice, and they seem to attempt to import actual malice, which is the state law standard for immunity for a state law claim, into our federal claim. Actual malice... That's why I'm asking you to address only the state part of it right now. Okay. Got it. So official immunity requires... Sort of a standard that we have in this case. It requires subjective intent to commit a wrongful act and the resulting harm. So our allegation is that both officers knew the evidence was false and submitted it to a magistrate. That qualifies. That meets even the highest standards of actual malice if an officer knowingly presents false information. And there are a number of Georgia cases cited, note 18 in our brief, which address that an officer who fabricates the basis for an arrest is not entitled to official immunity. While I'm on the subject, I'll just briefly address malice for the federal claim. First, they didn't raise malice in the district court. They raise it now. And as I said, conflate it with actual malice. This court has recognized that malice for the purposes of malicious prosecution claim can be inferred from a lack of probable cause. It sort of collapses into the probable cause element. And I'm doubting Luke versus Gulley and Williams versus Aguirre recognize that as well. So I don't think malice is an issue in this as far as the federal cause of action. Great. So let's turn back to the state malice issue. If you had to list evidence in the record that would support a finding of malice for purposes of the state claim, what would that evidence be? It would be, you know, we only have... Well, let me put it this way. I don't think we need to get to trans malice. I think that the lie to the magistrate is sufficient. But we also do know that as you observed in the opening, my client, her boyfriend were singled out. Two other people who engaged in the same conduct were sent away. They were arrested immediately for jaywalking, which officers have discretion whether or not to do that. Obviously, we all know that not everyone gets arrested for jaywalking, I think, in Atlanta. So all of that provides, I think the district court properly observed, this provides color to the claim. Now, whether they were motivated by trans, you know, bias, or whether they were motivated by, you know, race or appearance or anything isn't the germane issue. The germane issue is that they lied. And whether they lied about whoever it was, if they lie about whether a drug test is positive, that's enough for actual malice for the state law claim. But there are other... I'm sorry, just to make sure I understand, your argument is that that there's enough evidence in the record for a jury, especially when we're looking at this in the light most favorable to your client, since it's on summary judgment, for a jury to conclude that both officers actually knowingly lied in the arrest warrant application. And that equals malice. Is that... Am I understanding this correctly? Okay, thank you. Correct. Correct. And as I said, there is additional evidence which might provide color to that, which might provide color to that claim, as far as them being, you know, singled out and a jury could find. There's a dispute about whether our client and her friends were walking in the street. Our client says, I was on the sidewalk. The officers say she was in the street. The defendants say that's a reasonable mistake. We don't know what was in the officer's mind. It's like, well, if one says, I'm in the street, the other says, I'm in the sidewalk, the other says, I'm in the street, the jury could maybe, under some, you know, optical illusion, find that's a reasonable mistake or something. But they could also find that the officers fabricated the basis for the arrest. And so, the fact that from its inception, this was a targeted, fabricated enforcement, if a jury makes that finding, it would further reinforce actual malice. At what point in this process did the officers get the driver's license so that they would then know that your client was, in fact, transgender? It's a male name on the license, but I think she's dressed like a woman. At what point in all of this did they determine that information? I have that Restrepo knew she was transgender. The question at the deposition, when you, when could you tell, could you tell when you stopped Ms. Goldring she was transgender woman? He says, he answers, yeah. And then he says, obviously, from a distance. Unfortunately, that's the only snippet I have in front of me. That's Restrepo deposition, page 58, line 22 to page 59, line 13. My question was, at what point did they look at the driver's license? Is that in the record? I can't answer specifically whether the moment they looked in the driver's license is in the record, unfortunately. But that citation to the deposition is the best answer I can give right now. All right. Thank you. Thank you, Your Honor. All right. And we will hear now from Ms. Nair. Thank you, Your Honor. Good morning. My name is Alicia Marie Nair. There are two issues that we need to talk about. And Judge Rosenbaum specifically asked at the legal process. And based on what we know before us, we're talking about official immunity and qualified immunity. So when we're talking about qualified immunity, it has to be a misstatement, intentional or reckless. And when we're talking about intentional or reckless, we don't have that. What Judge Lutz said is that this is negligent. Investigator Henry didn't know the results because he didn't know how to perform the test. It was merely negligent of him to perform the test. And if we give credence to what Apelli is saying, then we know that he didn't know how to do the test because his own client said that the test was done seven times. And the first six was done in frustration. And then finally, when we get to the seventh, then we get a positive. That's giving credence to what Apelli says. But it doesn't matter because it is negligent. It is not intentional and it is not reckless. He simply did not know how to perform the test. But why isn't that a jury question, right? I mean, I agree that maybe a jury could reach the conclusion that you're suggesting, but why couldn't a jury also equally reasonably reach the determination that it was intentional, that he kept doing the test until he was able to say that he got the results he wanted? Because it has to be with malice and without probable cause. And so that is the standard for qualified immunity. And for probable cause, when you get to the legal process, you get the gatekeeper of the magistrate judge. So you're not just relying on what the officer testified to, but they actually had to present in an affidavit. But counsel, the problem here is the allegation is that they lied in the application to the we can't just rely on the magistrate judge's issuance of the arrest warrant, because if you take out the part that they allegedly lied about, there's not enough probable cause to issue the arrest warrant. So that's the problem here. I agree, Judge Rosamond, if, in fact, they did lie. But there is no evidence, not from Apelli or from Appellant, that there was a lie. The only information that I guess that brings me back to my original question, what is it about the evidence that he conducted the test seven times, he was frustrated, he was told to give it up by a fellow officer, that there was no, there was nothing there. And that Ms. Goldring herself said that it never changed color at all, let alone change to a faint causative, which in and of itself wouldn't have enough. Why couldn't a jury reasonably construe that evidence if it decided to believe all of that evidence as evidence that he knew that the test didn't come back as positive for cocaine, yet he swore to it anyway and he lied. It was a presumptive positive. The test had to be sent for GBI testing for the Georgia Bureau of Investigations, which it was sent in for testing. This is a presumptive positive. It doesn't guarantee, it doesn't confirm that there is actually the presence of an illegal substance. And so the information that is presented to the magistrate is just that I've done a test, I have suspicion that this is positive, and I believe it is enough to get over the threshold to charge an individual with this offense. And that is simply the end of that analysis. It is not... Haven't we also said that when we're evaluating whether or not there's enough in the record for a reasonable jury to conclude that an officer may have lied, we also consider facts that the officer did not include. And here, those facts would be the ones that I've previously stated. He didn't talk about how he did it six other times and came back negative. He didn't talk about how she said there's nothing there and he said it's a faint positive. And there is no such thing as a faint positive. He didn't talk about any of the other facts surrounding this. And haven't we said in our case law that when you don't put any of that in and you just put in the part that is allegedly a lie, that the fact that the other facts aren't in there can also be construed to suggest that by a reasonable jury that that's evidence of a lie? I'm not saying it wasn't a lie. I'm just asking, haven't we said that a reasonable jury could construe it that way? I don't disagree necessarily with that statement, Your Honor. The question is that did the magistrate have an opportunity to make this... Counselor, the time has expired. Thank you. May I briefly conclude? You may. ...is whether or not the magistrate had an opportunity to question the assignant and they did. And in this case, both qualified and official immunity are present and there was no actual malice. There's no evidence that is in the record that shows that either investigator, Henry nor Officer Restrepo, intentionally or recklessly presented any lies or had any reason to do so against appellee in this case and we ask that you reverse the lower court's decision and find for the appellant. Thank you. Thank you very much, Counsel. We will be in recess until tomorrow. Have a great day.